

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
NOV 05 2010
11-5-10
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Judge Robert Dow |
| v. | ) |
| | ) No. 10 CR 704 |
| NICOLE WHITFIELD | ) |

### PLEA DECLARATION

The defendant, NICOLE WHITFIELD, after extensive consultation with her attorney, DANIEL HESLER, acknowledges and states the following:

1. She has been charged by information with one count of using or attempting to use unauthorized access devices, namely credit cards which were re-encoded with electronic account information of others, and by so doing obtained and attempted to obtain things of value aggregating $1000 or more during a one year period of time, in violation of 18 U.S.C. §1029)(a)(2).

2. She has read the charge against her contained in the information, and that charge has been fully explained to her by her attorney.

3. She fully understands the nature and elements of the crime with which she has been charged.

4. She will enter a voluntary plea of guilty to charge contained in the information.

1

Factual Basis

5. She will plead guilty because she is in fact guilty of the charges contained in the information. In pleading guilty, Ms. Whitfield acknowledges the following facts to be true:

From in or about September 2005 through and including at least February 2006, defendant Nicole Whitfield, previously known as Nicole Stokes, used and attempted to use counterfeit and unauthorized access devices, namely, credit cards bearing her name which had been re-encoded with the electronic account information for other individuals' accounts held at various financial institutions. Ms. Whitfield used these cards to purchase merchandise from retailers such as Target and Wal-Mart at locations in and around the Chicagoland area. Ms. Whitfield obtained the re-encoded credit cards from Individual A, who typically drove defendant to the various retail locations. During these shopping trips, defendant typically purchased high-priced electronic items, such as plasma televisions or video game systems. To purchase these items, defendant presented a counterfeit re-encoded credit card to a cashier at the store. If the store's electronic credit card approval system denied a particular card, Ms. Whitfield often asked the cashier to re-submit the transaction for approval on the same card. Other times, after the system denied a particular card, Ms. Whitfield presented to

the cashier a different counterfeit and unauthorized re-encoded credit card for approval. On occasions when a transaction was approved, defendant signed her own name to the transaction receipt and left the store with the merchandise. Ms. Whitfield kept some of the merchandise, but provided the majority to Individual A. Occasionally, Individual A paid cash to Ms. Whitfield for some of the fraudulently obtained merchandise.

In total, during approximately 50 shopping trips that occurred from in or about September 2005 through and including February 2006, defendant used and attempted to use counterfeit credit cards that were re-encoded with account information held by other individuals. Defendant used the re-encoded credit cards to successfully access at least eight different accounts and to complete fraudulent transactions totaling approximately at least $26,000. In addition, defendant attempted to use the re-encoded credit cards in unsuccessful transactions relating to at least 16 other, different accounts. Those attempts, had they been successful, would have resulted in approximately $60,000 in additional loss. (This figure may include some losses attempted by other individuals who were also working for individual A, as well as losses that have already been prosecuted in a state proceeding.)

Finally, on or about February 10, 2006, defendant used and attempted to use at least three different re-encoded credit cards at a Target store located in Joliet, Illinois, among other retail locations, successfully completing a transaction for approximately $1,454 worth of merchandise. Defendant successfully completed the transaction on February 10, 2006, by using a credit card that had been re-encoded with the account information of another individual held at Wachovia Bank, account number **** **** **** 5038. Defendant's use and attempted use of this and the other counterfeit and unauthorized access devices affected interstate commerce, in that the credit cards were submitted by a Target cashier for approval through Target's electronic credit card approval system, which utilizes interstate bank channels of communications.

Potential Penalties

6. Ms. Whitfield understands that the charge contained in the information carries a maximum incarceration sentence of ten years and a maximum fine of $250,000. Ms. Whitfield also understands that the charge carries a term of supervised release of up to three years, or a sentence of probation of up to five years.

7. Ms. Whitfield understands that in accord with federal law, 18 U.S.C. §3013, upon entry of judgment of conviction, she will be assessed $100 on the count to which she has pled guilty, in addition to any other penalty imposed.

8. Ms. Whitfield acknowledges that pursuant to 18 U.S.C. §3663A, the Court is required to order a defendant to make full restitution, minus any credit for funds repaid prior to sentencing. In this case, Ms. Whitfield acknowledges that the restitution figure, including relevant conduct, may be something in the vicinity of $26,108.

Guidelines Calculations

9. For the purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to 28 U.S.C. § 994, it is Ms. Whitfield's understanding that the following provisions may apply:

(a) Pursuant to Guideline § 2B1.1(a)(1), the base offense level for the offense is level 6.

(b) Pursuant to Guideline § 2B1.1(b), the offense level is increased based on the amount of loss and/or the amount of intended loss. The amount of actual loss is approximately $27,755. Ms. Whitfield acknowledges that the sum of the credit cards that were attempted to be used may be around $89,000, but that many of those attempts were duplicitous attempts to obtain the same merchandise with multiple cards. It is the defendant's position that the value of the merchandise obtained or attempted to be obtained is the best measure of the intended loss in this case, and therefore the base offense level should be increased by 6 levels (corresponding to a $30,000 to $70,000 loss range) pursuant to §2B1.1(b)(1)(D).

(c) Pursuant to §2B1.1(b)(10)(C)(ii), two levels are properly added because the offense involved the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification, namely, unauthorized access devices that had been re-encoded with

6

the electronic information for other individuals' accounts held at various financial institutions. .

(d) Pursuant to Guideline §3B1.2, Ms. Whitfield reserves the right to seek a downward adjustment in her offense level based on her minor role in the offense.

(e) Ms. Whitfield admits her guilt, is extremely remorseful for her crime, and accepts full responsibility for her actions. She understands that a two-level reduction for acceptance of responsibility under § 3E1.1 may apply. Ms. Whitfield understands that this reduction is conditional upon a finding by the Court that she has in fact accepted responsibility for her actions.

(e) Ms. Whitfield reserves the right to request a downward departure or variance on any grounds she deems appropriate. Ms. Whitfield understands that any decision to depart or vary from the applicable guidelines lies solely within the discretion of the Court.

Preliminary Nature of Calculations

10. Ms. Whitfield and her attorney acknowledge that the above calculations are preliminary in nature and based on facts known to defendant at the time of this Plea Declaration. Ms. Whitfield understands that the probation office and the government will conduct their own investigations and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculations.

11. Errors in calculations or interpretation of any of the guidelines may be corrected or amended by the defendant prior to sentencing. She may correct these errors or misinterpretations by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application.

Trial Rights and Appellate Rights

12. Ms. Whitfield understands that by pleading guilty she surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charge against her, she would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting

8

without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict her unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt, and that it was to consider each count of the information separately.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not she was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in her own behalf. She would be under no obligation to do so, however,

9

because she is presumed to be innocent and thus need not prove her innocence. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the court.

(e) At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

(f) Ms. Whitfield understands that ahe has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a legally constituted grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Plea Declaration, Ms. Whitfield knowingly waives her right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that she has been prosecuted by way of information.

13. Ms. Whitfield understands that by pleading guilty she is waiving all the rights set forth in the prior paragraph. By pleading guilty Ms. Whitfield admits she is guilty and agrees that she should be found guilty. Ms. Whitfield's attorney has explained those rights to her, and the consequences of her waiver of those rights. Ms. Whitfield further understands that she is waiving all appellate issues that might have been available if she had exercised her right to trial, and only may

appeal the validity of this plea of guilty or the sentence.

Limitations and Consequences of this Plea Declaration

14.  Ms. Whitfield understands that the United States Attorney's Office will inform the District Court and the United States Probation Office of the nature, scope, and extent of her conduct regarding these charges and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing. Ms. Whitfield further understands that she will be able to present evidence in mitigation for sentencing.

15.  Ms. Whitfield understands that at the time of sentencing, the government and the defendant will be free to make their respective recommendations to the Court as they deem appropriate.

16.  Ms. Whitfield understands that the sentencing guidelines are no longer mandatory, and that this Court's decision as to what sentence constitutes a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a) may result in a sentence either within, greater, or less than the applicable sentencing guideline range. Ms. Whitfield understands that the applicable sentencing guideline range is one factor which this Court is required to take into consideration under 18 U.S.C. § 3553(a)(4), along with the other required factors under § 3553(a).

11

17. Should this Court refuse to accept Ms. Whitfield's plea of guilty, this Plea Declaration shall become null and void and defendant will not be bound thereto. It is the defendant's position that, should the Court decline to accept her plea, this Plea Declaration and the ensuing court proceedings are inadmissible in later court proceedings pursuant to Federal Rule of Evidence 410.

18. Ms. Whitfield agrees that this Plea Declaration shall be filed and become part of the record of the case.

19. Ms. Whitfield and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, to induce her to plead guilty. Ms. Whitfield further acknowledges that she has read this Plea Declaration and carefully reviewed each provision with her attorney.

Signed this 5th day of November, 2010

_____
Nicole Whitfield, Defendant

FEDERAL DEFENDER PROGRAM
Carol A. Brook,
Executive Director

By: _____
Daniel Hesler
Attorney for Defendant

DANIEL HESLER
FEDERAL DEFENDER PROGRAM
55 East Monroe Street, Suite 2800
Chicago, IL 60603
(312) 621-8347